# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BRECHER, et al., | CASE NO. 09cv1344-LAB (AJB) |
| Plaintiffs, | **ORDER GRANTING IN PART MOTION TO DISMISS** |
| vs. | [Docket No. 14.] |
| CITIGROUP GLOBAL MARKETS, INC., et al., | |
| Defendants. | |

This putative class action brings claims under California law. Claims are brought on behalf of four Plaintiff classes consisting of Defendants' past or current employees who were eligible for several particular types of benefits or compensation. Defendants have moved to dismiss the First Amended Complaint ("FAC").

In support of their motion, Defendants have requested judicial notice of a California Supreme Court decision handed down after the motion was fully briefed.

## I.    Request for Judicial Notice

Under Fed. R. Evid. 201(b), the Court can take judicial notice of facts not subject to reasonable dispute, including the existence of orders and decisions by other courts. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). Under FRE 201(d), the Court must take notice if requested by a party and if supplied with the necessary information. Plaintiffs did not object to the request for notice.

The case is *Schachter v. Citigroup, Inc.*, 47 Cal.4th 610 (2009) and it addresses many of the issues raised here. Furthermore, because the Court is sitting in diversity, it must apply the substantive law of the forum state, under the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because it is relevant, the Court **GRANTS** the request and takes notice of the California Supreme Court's decision and holdings.

**II.    Motion to Dismiss**

    **A.    Legal Standards**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). However, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted).

Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *See Warren*, 328 F.3d at 1141 n.5 (9th Cir. 2003). Under Rule 12(b)(6), extrinsic evidence can generally only be considered if the motion is converted to a Rule 56 motion for summary judgment. However, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**B.     The FAC**

The FAC brings five claims. The first is for violation of California's Unfair Competition Law ("UCL"), § 17200 *et seq.*, based on the allegations of violations of Cal. Bus. & Prof. Code § 16600, as well as unfair forfeiture of wages. The second is brought against all Defendants for breach of fiduciary duty, for allowing Citigroup's share price to decline. Plaintiffs allege Defendants had a fiduciary duty either to prevent this from happening or to compensate Plaintiffs for the decline. The third claim is for breach of contract, based on allegations that the employer[1] agreed to award Plaintiffs bonuses if they met certain goals, then did not award the bonuses even though the goals were met. (FAC, ¶ 35.) As part of the same claim, Plaintiffs argue in the alternative that even if the goals were not met, they made a good faith effort to meet them and therefore "have substantially performed all of their obligations on their part [*sic*] to be performed, except for those obligations that were excused . . . ." (*Id.*)

The fourth claim, for breach of the implied covenant of claim and fair dealing, alleges the employer interfered with Plaintiff's right to receive the benefit of the agreement. No further details are alleged. The fifth claim is for violation of California Labor Code § 2802(a), which requires employers to indemnify employees "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." The fifth claim also incorporates a claim for waiting time penalties under Cal. Lab. Code § 203.

The "Loan Class" alleged in the FAC consists of employees who received forgivable loans that would accelerate if their employment terminated. The "Stock Award Class" consists of employees who received stock awards that would be forfeited if their employment terminated. The "Unawarded Bonus Class" consists of employees who were deprived of bonuses they are allegedly entitled to. The "Business Expense Class" consists of employees

---

[1] The employers are Defendant Citigroup Global Markets, Inc. ("CGMI"), and Defendant Citigroup, Inc. The employer is referred to variously as CGMI, Smith Barney, and Citigroup, but most often as Smith Barney. The FAC identifies Smith Barney as a "dba" name of CGMI, while Defendants represent that before June 1, 2009, "Smith Barney" was a division and service mark of CGMI.

who incurred certain reimbursable business expenses that Defendants failed to reimburse.

The Loan Class's claims are based on "Acceleration Provisions." As described in paragraph 11 of the FAC, the employer made loans to Plaintiffs in exchange for a promissory note. For each year Plaintiffs worked there, a portion was forgiven. If Plaintiffs left employment, the loans accelerated immediately, pursuant to the Acceleration Provisions.

The FAC describes the terms of the Citigroup Stock Award Program ("CSAP"), from which the Stock Award Class's claims arise. Plaintiffs "received an initial award of Citigroup stock" when their employment began, and "received additional awards of Citigroup stock" as other goals were met. (FAC, ¶ 12.) Although the FAC alleges Plaintiffs "received" the stock, in fact it was held for them. (*Id.*) If Plaintiffs left employment before delivery of the shares, they were forfeited. Plaintiffs refer to the terms providing for forfeiture of the shares as the "Forfeiture Provisions."

With regard to the Acceleration Provisions and Forfeiture Provisions, the allegations do not distinguish between terminations for cause, terminations without cause, and voluntary departures. The FAC alleges that because both sets of provisions "restrain[ed] plaintiffs from leaving their employment at Smith Barney and competing against defendants," they were unlawful under Cal. Bus. & Prof. Code § 16600, which provides, subject to exceptions, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

On June 1, 2009, after the FAC was filed, Smith Barney formed a joint venture and merged with Morgan Stanley. As part of their defenses, Defendants argue the employees retained by the new entity released Citigroup from any liability. The FAC obviously does not mention the merger. It therefore does not address the effect of the merger on the employment agreements at issue here, or on Plaintiffs' claims. Defendants attach a retention agreement (Mot. to Dismiss, Clark Decl., Ex. A) which they contend releases claims against Defendants. (Mot. to Dismiss, 4:22–5:4.) While Plaintiffs do not dispute its authenticity, the release is not mentioned in the FAC and is not judicially noticeable, so it is not properly considered at this stage.

**C.     Analysis**

    **1.     Violation of California's UCL**

California's UCL allows violations of other laws to be treated as independently actionable unfair competition, and also covers some other acts and practices not specifically proscribed by other laws. *Hauk v. JP Morgan Chase Bank U.S.*, 552 F.3d 1114, 1122 (9th Cir. 2009). Here, Defendants' alleged violation of Cal. Bus. & Prof. Code § 16600 and allegedly unfair practice of requiring Plaintiffs to "forfeit" their wages are the only bases for the UCL claim, so to state a claim under the UCL, Plaintiffs must show a violation of § 16600 or illicit forfeiture of wages.

Defendants argue Plaintiffs have failed to state a claim under § 16600, and consequently California's UCL, because incentives to remain with the employer do not restrain Plaintiffs from engaging in a lawful profession, trade, or business. They do not specifically address the general unfairness claim, but they do argue a retention agreement of this type is permitted and legitimate.

According to the FAC, Plaintiffs would forfeit the shares held for them if they left employment before they qualified for the shares and the shares were delivered to them. California courts have found violations of § 16600 when employees were required to forfeit some benefit if they worked for an employer. *See Muggill v. Reuben H. Donnelley Corp.*, 62 Cal.2d 239, 242 (1965) (holding that § 16600 invalidates provisions in employment contracts that impose penalties if an employee works for a competitor after completion of his employment). In general, California courts condemn noncompetition agreements. *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 946 (2008).

As alleged here, however, the Acceleration Provisions and Forfeiture Provisions are not triggered by employment with a competitor, but by leaving employment for any reason; it makes no difference what, if anything, Plaintiffs do after their employment ends. Plaintiffs have cited no authority, nor has the Court found any, to show such an arrangement amounts to a noncompetition agreement. While *Schachter* did not examine whether such an agreement might violate § 16600, it did speak approvingly of them, describing them as

"incentive compensation." *Schachter*, 47 Cal.4th at 621. Incentive compensation is "an inducement to employees to procure efficient and faithful services." *Id*. (alteration, quotation marks, and citation omitted). The fact that quitting to work for a competitor is one of many ways to fail to render "faithful services" does not transform an incentive compensation agreement into a noncompetition agreement.

The theory underlying the Acceleration Provisions claims is even more attenuated. Plaintiffs allege they were given loans and a portion of the loans were forgiven over time, provided they remained employed by Defendants. If employment terminated, the loans became payable. In one sense, the loans can be viewed as promised bonuses, which would only come due periodically as Plaintiffs continued their employment. The primary difference between bonuses and these forgivable loans was that Plaintiffs were paid the cash up front, as a type of advance. While an employee receiving a bonus might spend it and become unable to pay it back easily, there is no allegation this was required, encouraged, or contemplated. As with the Forfeiture Provisions, the fact that acceleration was triggered by termination of employment, and not by competition, means these provisions did not violate § 16600.

Plaintiffs also argue the Acceleration and Forfeiture Provisions are actionable under the UCL because they result in the forfeiture of wages. *Schachter* addresses the "forfeiture of wages" argument with respect to the Forfeiture Provisions, concluding that if employees are required to fulfill conditions before being entitled to stock and they terminate employment without doing so, no earned wages are forfeited. 47 Cal.4th at 622–23. Because the theory underlying the Acceleration Provisions claim is even more attenuated, *Schachter* disposes of that as well.

In light of *Schachter*'s holding, it is clear Plaintiffs will not be able to state a claim based on a violation of Cal. Lab. Code § 16600. The Acceleration Provisions and Forfeiture Provisions might also be actionable under the UCL if they violate some other law or are unfair for some other reason, but they do not violate § 16600. Plaintiffs might still be able to state a claim for forfeiture if they can show they did not voluntarily depart and were not

terminated for cause, but they have not pleaded this.

### 2.   Breach of Fiduciary Duty

The FAC alleges that because the Stock Award Class members are shareholders, Defendants breached their fiduciary duty to these Plaintiffs by not preserving the value of Citigroup's stock.  It also alleges "defendants have the authority and the duty under the terms of the CSAP to administer the CSAP for the benefit of" these Plaintiffs.  Plaintiffs argue that Defendants should have increased the awards to compensate these Plaintiffs for declines in stock value.

In response, Defendants argue the corporation owes no duty to shareholders to preserve the value of shares. They cite *Schuster v. Gardner*, 127 Cal.App.4th 305, 312 (Cal. App. 4 Dist. 2005) and *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998), arguing that such a claim against management belongs to the corporation and not to individual shareholders. In other words, Defendants argue Plaintiffs are attempting to bring a derivative suit, when in fact they have not satisfied the requirements to do so and could only bring a direct suit, which they have not pleaded.  Plaintiffs argue they are bringing a direct suit but the Court agrees Plaintiff's claims for failure to maintain the value of shares is properly derivative. *Schuster*, 127 Cal. App. 4th at 313.

This is an odd claim, because no Defendant is a corporate director or officer sued in that capacity.   The "Citigroup, Inc. Personnel and Compensation Committee" (the "Committee") is named as a Defendant, but there is no allegation the Committee has any duty to preserve share value.  In essence, Plaintiffs are suing the corporation itself for failure to preserve the value of its own stock.

The second part of this claim, for failure to pay Plaintiffs more after the value of the shares declined, is not adequately pleaded.   In their opposition, Plaintiffs suggest Defendants should have somehow invested and managed the stock for them, and that Defendants' failure to do so violates Cal. Prob. Code §§ 16600 and 16047(a). Plaintiffs have not alleged the Committee or either of the other Defendants has the authority or ability to do anything with the shares other than hold them and deliver them when due.  Plaintiffs have

not pleaded facts from which the Court could conclude they had a fiduciary duty to do anything other than hold the shares and deliver them when due. They have not alleged the CSAP requires or even permits Defendants to sell the stock, trade it for other stock, or invest it in any other way. The FAC also unaccountably blurs distinctions between Defendants' obligations as trustors (the employers, as parties to the stock award agreement) and as alleged trustees (who had the duty to hold and deliver the shares when due).

Furthermore, the Court notes that to the extent Plaintiffs validly forfeited their stock, their claims are moot. Plaintiffs have no standing to sue Defendants for failing to preserve the value of something they never became entitled to. It is unclear whether Plaintiffs will be able to amend this claim and, if so, whether it will require adding defendants.

### 3. Breach of Contract

The portion of the FAC addressing this claim alleges Plaintiffs and the Unawarded Bonus Class were promised "Back-End Bonuses if they met certain goals regarding the transfer of clients from their previous employer to Smith Barney." (FAC ¶ 34.) They allege they met their goals and performed all obligations. In the alternative, they argue they

> made a good faith effort to comply with their obligations and have substantially performed all of their obligations on their part to be performed, except for those obligations that were excused, and defendants have received essentially what the agreement called for.

(FAC ¶ 35.) These allegations are too conclusory to support a claim. What the agreement obligated Plaintiffs to do, what Plaintiffs did to fulfill them, and what might have excused non-performance are not specified. The allegation that Plaintiffs fulfilled their obligations and that non-performance was excused are both unwarranted conclusions unsupported by factual allegations and therefore insufficient. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

In their Opposition, Plaintiffs agree Taylor "was promised a Back-End Bonus . . . (subject to a five year vesting schedule) if he succeeded in transferring 80% of his clients' assets to Smith Barney by September 2008." (Opp'n at 12:7–9.) They then allege Taylor either met this requirement or, "if he did not meet it, he made a good faith effort to comply and substantially performed what the agreement called for." (*Id*. at 12:10–11.) It is

unclear what a "good faith effort" and "substantial" performance would mean here, and these are likewise insufficient.

Defendants point out the named Plaintiffs were told they were not entitled to receive Back-End Bonuses for "several years," and in at least one case, five years. (Opp'n, 11:19–12:1.) They specifically mention the agreement of Plaintiff Taylor (the only named member of the "Unawarded Bonus Class"), who was told he would first be eligible for a bonus after five years but who was employed by Smith Barney for less than two years. They attach this agreement as an exhibit. At this stage of the litigation, however, the Court does not consider extrinsic evidence such as the number of years the named Plaintiffs were employed.

Plaintiffs, in turn, argue that the bonuses "should have been <u>awarded</u>" when goals were met (in Taylor's case, in September, 2008) "even though they would not have begun to <u>vest</u> until Taylor's fifth year of employment." Plaintiffs have failed to plead facts showing what benefit a mere award of bonuses would be, and why Taylor was harmed by failure to "award" the unvested bonus. Plaintiffs' opposition acknowledges the authenticity of Taylor's New Hire Agreement (Hines Decl. in Supp. of Mot. to Dismiss, Ex. C), which forms the basis for his claim.

The Court therefore treats this agreement as part of the complaint, and assumes its contents are true for purposes of the motion to dismiss. *Ritchie*, 342 F.3d at 908. The New Hire Agreement, dated August 17, 2007, identifies bonuses to be paid, and gives a specific vesting schedule for each: "Years 5–9 @ 20% each." This means the bonuses did not begin to vest for five years, and would vest at 20% per year through the ninth year of employment. Taylor agrees he began his employment with Smith Barney in August, 2007. (Opp'n at 2:23–24.) Because the first of those years would be 2012, Taylor would not be entitled to any interest in those bonuses until then, even assuming he earned them.

Because Taylor's employment status is unclear, the Court cannot assume his bonuses will never vest or did not under some alternate theory partially vest. *See Schachter*, 47 Cal.4th at 622 (noting provision that involuntary termination without cause would entitle

an employee to partial payment). If this claim is amended, Plaintiffs must include factual allegations to show why this claim is ripe and how Taylor and the Unawarded Bonus Class were harmed.

### 4. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff Taylor and the Unawarded Bonus Class bring this claim, alleging Defendants unfairly interfered with their right to receive the benefits of their agreements. This claim is entirely conclusory because no factual allegations explain what Defendants did.

As explained above, Taylor never become entitled to receive a Back-End Bonus. He might, however, be able to plead facts showing Defendants did something that violated the covenant of good faith and fair dealing and prevented his claim from ripening so this claim will be dismissed without prejudice.

### 5. Failure to Indemnify for Expenditures

The FAC cites Cal. Lab. Code § 2802(a)'s requirement that employers indemnify their employees "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." The FAC further alleges:

> Beginning sometime in 2008, [D]efendants . . . began to charge plaintiffs and the Business Expense class for trade errors and staff support wages. These are "necessary expenditures or losses" under Section 2802(a), for which defendants have a duty to reimburse plaintiffs and the Business Expense Class members.

(FAC, ¶ 44.)

Defendants point out Plaintiffs have not explained what "trade errors" and "staff support ages" were, or the circumstances surrounding them. It is impossible to say, looking at the face of the FAC, whether they were incurred in consequence of the discharge of Plaintiffs' duties.

In their opposition, Plaintiffs mention a few explanatory details, but these do not appear in the FAC. Furthermore, even these details are rather brief: "[B]eginning in 2008, Smith Barney began to take deductions from its financial advisors' wages to pay for errors in securities trades and to supplement the wages of Smith Barney's support staff." (Opp'n, 13:13–15.) Plaintiffs argue in a footnote that Defendants understand what this claim is

about and cite certain proceedings in other courts, but the fact remains the FAC is not clear on its face.  Defendants are entitled to notice in the complaint of the basis for the claims against them. *Bell Atlantic v. Twombly*, 550 U.S. 544, 560–61 (2007). Requiring Defendants to fill in the blanks and plead claims against themselves is inequitable.  Adequately clear pleadings are also indispensable to the Court.  Even assuming Defendants do understand the nature of the claims, the Court cannot make its rulings on the basis of information it is not privy to.

The FAC adds a paragraph requesting waiting time penalties under Cal. Lab. Code § 203 for Business Expense Class members who left employment and were not paid.  While this must be dismissed along with the rest of the fifth claim, this appears to be a Plaintiff sub-class or possibly a fifth Plaintiff class, and a different cause of action.  If they amend this claim, Plaintiffs should consider how these claims should be pleaded.

**III.    Other Matters**

The Hines Declaration in support of Defendants' motion attaches a number of unredacted agreements containing personal information in violation of Fed. R. Civ. P. 5.2. While the declaration was cited in this order and therefore ought to be preserved, it should not remain in the docket in its current form.  The declaration must therefore be stricken and replaced with a redacted copy.

The Court's review of the briefing on this motion have made apparent that the classes as identified in the FAC are obviously too broad and ill-defined.  When amending the complaint, Plaintiffs are therefore directed to define classes appropriately in terms of time periods employed; whether employment was terminated; any releases they may have signed; and if appropriate, the effect of the merger.  Plaintiffs are directed to consider the effect *Schachter*'s rulings have on their claims, including among other things the different claims of employees who were terminated for cause or without cause, or who voluntarily departed. Plaintiffs are also directed to plead their amended complaint to show whether the class requirements are met.

Finally, although Plaintiffs are being given leave to amend, they should amend their complaint consistently with this order, and they must plead facts to support all claims. They may add new theories to support claims already pleaded, but their theories must be supported by factual allegations. They may not add new claims or parties without leave.

**IV.    Conclusion and Order**

For the reasons set forth above, the motion to dismiss is **GRANTED IN PART**. To the extent Plaintiffs' claims are based on the theory that Defendants violated Cal. Lab. Code § 16600, they are **DISMISSED WITHOUT LEAVE TO AMEND**. Plaintiffs may, however, amend the first claim to state facts under an alternate theory. The remainder of the FAC is **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**.

If Plaintiffs wish to add new claims or parties, they shall first seek leave to do so by filing an *ex parte* application not longer than seven pages explaining why the additions are appropriate, and attaching their proposed amended complaint as an exhibit. If they do so, Defendants may file an opposition not longer than seven pages, no later than seven calendar days after Plaintiffs file their application. The opposition should be focused on the permissibility of amendment, rather than the proposed amended complaint's likelihood of success. No reply is required or requested.

**No later than thirty calendar days from the date this order is issued**, Plaintiffs must either file a second amended complaint, or an application for leave to amend and to add claims or parties.

The Hines Declaration (Docket no. 14-3) is hereby ordered **STRICKEN**. The Clerk is directed to remove it from the docket. The parties are directed to retain unredacted copies in their files. Within **seven calendar days of the date this order is issued**, Defendants shall file a notice of amendment to their motion to dismiss, attaching a redacted copy of the declaration that complies with Fed. R. Civ. P. 5.2. Plaintiffs' counsel may consult with

/ / /

/ / /

/ / /

Defendants' counsel regarding the redactions. The declaration should not be re-executed or altered in any material fashion except for the necessary redactions.

**IT IS SO ORDERED**.

DATED: March 29, 2010

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge