UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BRECHER, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>CITIGROUP GLOBAL MARKETS, INC., et al.<br><br>　　　　　Defendants. | Case No.: 3:09-cv-1344 AJB (MDD)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND DENYING MOTION TO STRIKE AS MOOT**<br><br>**[Doc. No. 52]** |

On April 28, 2010, Plaintiffs filed the Second Amended Complaint ("SAC") [Doc. No. 46] in this action in accordance with the Order Granting in Part Motion to Dismiss filed on March 29, 2010 ("March 29 Order") [Doc. No. 44]. This putative class action asserts claims under California law on behalf of two classes of Defendants' past or current employees who either did not receive *pro rata* vesting of company shares, or who were not reimbursed for payments made to support staff. (SAC 6-7.) On July 12, 2010, Defendants filed the instant Motion to Dismiss or, in the Alternative, Motion to Strike Second Amended Complaint [Doc. No. 52]. The Court has considered the SAC, the March 29 Order, and the Motion, along with Plaintiffs' Opposition [Doc. No. 54], and Defendants' Reply [Doc. No. 55]. For the following reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** as set forth below. The Defendants Motion to Strike is DENIED AS MOOT.

# BACKGROUND

**A. Factual Background**

In August 2005, Smith Barney, a wealth management company and Citigroup subsidiary, hired Plaintiffs Brecher and Short as financial advisors in San Diego, California, and hired Plaintiff Murphy as a financial advisor in Walnut Creek, California. (SAC 3.) In August 2007, Smith Barney hired Plaintiff Taylor as a financial advisor in San Diego. (*Id.*) As incentive to join the company, Smith Barney awarded Brecher, Short, and Taylor unvested Citigroup shares under the Citigroup Stock Award Program ("CSAP"). (*Id*. at 3-4.) The CSAP prospectus ("Prospectus") set forth the terms, and each Plaintiff's New Hire Agreement outlined the individual award amounts and vesting schedule. (*Id* at 3.) Brecher was awarded 7,107 shares on a seven-year vesting schedule, with 25% of the total shares vesting in years four, five, six and seven, ending in August, 2012. (*Id*. at 4.) Short received 11,296 shares subject to the same vesting schedule as Brecher's. (*Id.*) Taylor received 6,142 shares on a nine-year vesting schedule, with the first 20% of the shares vesting in August, 2012 and 20% of the total shares vesting each year thereafter through August, 2017. (*Id.*) According to the Prospectus, the award of shares was subject to a cancellation provision which stated that the "award will be cancelled if . . . employment is terminated for any reason before the end of the applicable vesting period" ("Cancellation Provision"). (SAC Ex. 1.)

During Plaintiffs' employment at Smith Barney the company instituted a policy whereby Plaintiffs were expected to pay a portion of their commissions to their sales assistants to supplement their sales assistants' wages. (*Id.* at 5.) Between January 1, 2007 and June 1, 2009, Brecher and Short paid approximately $20,000 per year to their sales assistant, Taylor paid approximately $3,500 per year to his sales assistant, and Murphy paid approximately $5,000 per year to her sales assistant. (*Id.*) These payments to the sales assistants were not reimbursed by Smith Barney. (*Id.*)

On or about January 13, 2009, Morgan Stanley and Citigroup entered into a joint venture in which they each contributed portions of their brokerage businesses to create a new entity known as Morgan Stanley Smith Barney ("MSSB"). (Mot. Dismiss Mem. P. & A. 3.) On April 24, 2009, Brecher and Short executed a Financial Advisor/Investment Representative Retention Agreement ("Retention Agreement"). (SAC 6.) This agreement provided that the employee signing the agreement would

release Smith Barney and Citigroup from all claims against them, except for claims that arise after the date of the execution of the Retention Agreement or those already filed and pending at the time of the execution of the Retention Agreement. (*Id.*) Taylor and Murphy did not execute the Retention Agreement.

On June 1, 2009, Defendant Citigroup completed the transaction with Morgan Stanley to create MSSB, and Brecher, Short, and Taylor's employment with Smith Barney was involuntarily terminated without cause as a result of the transaction. (*Id.* at 3.) Pursuant to the Prospectus, Brecher, Short, and Taylor's CSAP awards were cancelled. (*Id.* at 4.) MSSB subsequently hired Brecher, Short, and Taylor, and replaced their cancelled CSAP awards with unvested Morgan Stanley shares with the same vesting schedule. (*Id.*) Brecher, Short, and Taylor are currently employed by MSSB. (*Id.*) Murphy voluntarily terminated her employment with Smith Barney in April, 2009, and is not employed by MSSB. (*Id.*)

**B.    Procedural Background**

On May 20, 2009, Plaintiffs filed the First Amended Complaint ("FAC") in the Superior Court of the State of California, County of San Diego. (Not. Removal 2, Doc. No. 1.) Defendants removed the action to the United States District Court, Southern District of California on June 22, 2009, pursuant to 28 U.S.C. § 1332(d)(2) (2006). (*Id.*) On July 15, 2009, Defendants filed a motion to dismiss the FAC, which was granted in part and denied in part by the March 29 Order. (Doc. Nos. 14, 44.) The March 29 Order dismissed without prejudice the three causes of action that remain in the SAC. (March 29 Order at 12.) In granting leave to amend the breach of implied covenant of good faith and fair dealing claim, the Court noted that Plaintiffs "might . . . be able to plead facts showing Defendants did something that violated the covenant of good faith . . . ." (*Id.* at 10.) Similarly, the Court explained that the "Forfeiture Provisions might . . . be actionable under the UCL if they violate some other law or are unfair for some other reason . . . ." (*Id.* at 6.) Lastly, the Court dismissed Plaintiffs California Labor Code section 2802 claim because the complaint did not provide enough details to place Defendants on notice of the claims against them. (*See id.* at 10-11.)

On April 28, 2010, Plaintiffs filed the SAC to address the deficiencies noted in the March 29 Order. On May 26, 2010, Defendants filed the Motion to Dismiss or, in the Alternative, Motion to Strike Second Amended Complaint.

## LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). However, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted).

Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *See Warren*, 328 F.3d at 1141 n.5. Under Rule 12(b)(6), extrinsic evidence can generally only be considered if the motion is converted to a Rule 56 motion for summary judgment. However, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Additionally, because the Court is sitting in diversity, it must apply the substantive law of California under the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

## DISCUSSION

In the SAC, Plaintiffs assert three causes of action against Defendants on behalf of two stock classes. The first cause of action is for breach of the implied covenant of good faith and fair dealing.

The second is for violation of the Unfair Competition Law section 17200, and the third is for violation of California Labor Code section 2802.

The "Stock Award Class" is defined as:

All individuals who: (1) were employed by Smith Barney in the State of California; (2) were terminated by Smith Barney as a result of the transaction between Citigroup and Morgan Stanley on or about June 1, 2009; and (3) did not receive immediate vesting of a pro rata portion of their unvested CSAP shares upon their termination from Smith Barney. (SAC 6.)

The "Business Expense Class" is defined as:

All individuals who: (1) were employed by Smith Barney in the State of California on or after January 1, 2008; (2) paid a portion of their commissions to their support staff to supplement their wages; and (3) were not reimbursed for those payments by Smith Barney.(*Id.* at 7.)

**A.     Breach of Implied Covenant of Good Faith and Fair Dealing**

In the first cause of action by the Stock Award Class, Plaintiffs claim that the Prospectus and New Hire Agreements contained an implied covenant of good faith and fair dealing that prevented Smith Barney and Citigroup from interfering with Brecher, Short, and Taylor's rights to receive the benefits under those agreements. (*Id.* at 8.) Plaintiffs maintain that by terminating Plaintiffs and failing to vest and distribute a *pro rata* portion of Plaintiffs' and Stock Award Class members' unvested CSAP shares, Defendants breached the implied covenant of good faith and fair dealing. (*Id.*)

In the Motion to Dismiss, Defendants assert that Plaintiffs' claim for breach of covenant of good faith and fair dealing should fail as a matter of law. (Mot. Dismiss Mem. P. & A. 7-10.) The implied covenant, they argue, exists only to protect the agreement actually made. (*Id.* at 8) (citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000)). Because the express terms of the agreements specifically allow the cancellation of unvested awards at the termination of employment, the implied covenant may not "be read to prohibit a party from doing that which is expressly permitted by an agreement." (*Id.*) (quoting *Carma Developers, Inc. v. Marathon Develop. Cal. Inc.*, 2 Cal. 4th 342, 374 (1992)).

In the Opposition, Plaintiffs argue that "[a] specific bonus plan normally becomes binding as a unilateral contract when the employee begins performance, in the sense that the plan then cannot be revoked by the employer." (Opp'n 6) (quoting *Neisendorf v. Levi Strauss & Co.*, 143 Cal. App. 4th 509, 523 (2006)). The termination without cause was "in effect, an attempt by Defendants to revoke

Plaintiffs' rights under the CSAP. Defendants' actions alone prevented Plaintiffs from receiving the benefit of their agreement." (Opp'n 6.)

Plaintiffs also rely heavily on the fact that Plaintiffs Brecher, Short, and Taylor were terminated involuntarily without cause to support their breach of implied covenant claim. They claim that "involuntary termination does *not* impede an employee's right to receive a bonus where no other action is required on the part of the employee to earn the bonus." *Id.* at 7, quoting *Willson v. Turner Resilient Floors*, 89 Cal. App. 2d 589 (1949). Because it was solely Defendants' actions, not Plaintiffs', that caused Brecher, Short, and Taylor to lose the unvested shares, Plaintiffs are entitled to a portion of the shares "because they performed all the conditions necessary to do so." (Opp'n 7.)

Additionally, Plaintiffs assert that in a recent case decided "under nearly identical facts," the California Supreme Court recently explained that "common law contract principles prohibit an employer from terminating an employee without cause unless the employer distributes a *pro rata* portion of unvested stock." *Id.* citing *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 622 (2009). In *Schachter*, the Plaintiff employee voluntarily participated in the company's capital accumulation plan. *Schachter*, 47 Cal. 4th at 614. Under the plan, eligible employees could elect to receive awards of restricted company stock "in lieu of cash payment of a percentage of the employee's annual compensation." *Id.* The California Supreme Court noted, in dicta, that if employee's employment had been terminated without cause, the plan's stated terms required him to forfeit his shares of restricted stock in exchange for "a cash payment equal to the portion of this or her annual compensation that had been paid in the form of such forfeited [r]estricted [s]tock." *Id.* at 622. That provision, the court opined, is consistent with contract law principles prohibiting efforts by one party to a contract to prevent completion by the other party. *Id.*

Here, Plaintiffs claim that they received unvested stock as incentive to join Smith Barney. (SAC 3-4.) The vestment schedule no doubt served as an incentive to remain with the company for an extended period of time. Unlike in *Schachter*, Plaintiffs have not plead that the unvested stock award was in lieu of annual compensation. *Schachter* was eligible to receive a pro rated cash equivalent of the stock in case of involuntary termination without cause because he had already earned the amount as annual compensation. In other words, *Schachter* could "gather the fruit" of his labor. *Schachter*, 47

Cal. 4th at 622. Plaintiffs argue that they "are entitled to 'gather the fruit' of their labor because they performed all conditions necessary to do so." (Opp'n 7.) Plaintiffs' unvested stock awards, however, are directly related to the amount of time they were employed by Smith Barney under the express terms of the agreements. Plaintiffs did not perform all conditions necessary to "gather the fruit" because they did not remain employed throughout the vesting schedule. In fact, remaining with the company was the only condition necessary to receive the bonus.

But for purposes of this Motion, the issue is whether or not Plaintiffs have adequately plead a cause of action for breach of implied covenant of good faith and fair dealing. Defendants argue, and the Court agrees, that Plaintiffs have not. (Reply 2.) In dismissing the same claim in the First Amended Complaint, the Court noted that Plaintiffs did not allege any factual allegations to explain what Defendants did to breach the implied covenant. (March 29 Order 10.) In response, Plaintiffs plead two acts by Defendants in the SAC that allegedly breached the implied covenant of good faith and fair dealing: (1) "terminating plaintiffs' and the Stock Award Class member's employment . . . ;" and (2) "failing to vest and distribute a pro rata portion of [Plaintiffs' and Stock Award Class members'] unvested CSAP shares . . . ." (SAC 8.)

As to the first act, while the implied covenant of good faith and fair dealing "exists . . . to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made," *Guz*, 24 Cal. 4th at 349, the California Supreme Court has made clear that an employer's termination decision, absent a contractual provision otherwise, is not a breach of the implied covenant of good faith and fair dealing. *See id.* at 350. In *Guz v. Bechtel Nat'l, Inc.,* the California Supreme Court explained:

> Precisely because employment at will allows the employer freedom to terminate the relationship as it chooses, the employer does not frustrate the employee's contractual rights merely by doing so. In such a case, "the employee cannot complain about a deprivation of the benefits of continued employment, for the agreement never provided for a continuation of its benefits in the first instance."

*Id.* (quoting *Hejmadi v. AMFAC, Inc.*, 202 Cal.App.3d 525, 547(1988)). California Labor Code section 2922 establishes the presumption that an employer may terminate its employees at will, for any or no reason. Plaintiffs have not plead that Defendants violated any contractual provision restricting the employer's right to terminate employees at will. Moreover, Plaintiffs have not alleged that Defendants

exercised their discretion to terminate Plaintiffs' employment in bad faith.  *See McCollum v. xCare.Net, Inc.*, 212 F.Supp.2d 1142, 1153 (N.D. Cal. 2002).  Thus, Defendants' act of terminating Plaintiffs and Stock Award Class members' employment is not a breach of the implied covenant of good faith and fair dealing.

The second act alleged, failure to vest and distribute a *pro rata* portion of award shares, similarly does not breach the implied covenant of good faith and fair dealing.  The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."  *Guz*, 24 Cal. 4th at 349-50.  Defendants cannot have violated the implied covenant of good faith and fair dealing by failing to vest and distribute a *pro rata* portion of the unvested CSAP shares because the specific terms of the agreements very clearly allowed vesting of the CSAP award shares only if the employee remained employed throughout the vesting period. (*See* SAC, Ex. 1, at p. 5 ("Unless your Award Agreement provides otherwise, your award will be cancelled if your employment is terminated for any reason before the end of the applicable vesting period.")).  The Court cannot imply terms to the contract calling for *pro rata* distribution because the implied covenant cannot "be endowed with an existence independent of its contractual underpinnings."  *Guz*, 24 Cal. 4th at 349 (citation omitted).

The Plaintiffs have not identified facts sufficient to support a claim for breach of the implied covenant of good faith and fair dealing.  Based upon the foregoing, the Defendants' Motion to Dismiss Plaintiffs' first cause of action is **GRANTED**.  Accordingly, the claim for breach of implied covenant of good faith and fair dealing is **DISMISSED**.  In light of the fact that Plaintiffs have amended their pleadings twice, the Court concludes that no other factual allegations can cure the defects of this cause of action and accordingly **DISMISS** the claim **WITH PREJUDICE**.  *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n. 3 (9th Cir. 1987); *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995).

**B.     Violation of the Unfair Competition Law**

The second cause of action by the Stock Award Class alleges that the Cancellation Provision is both procedurally and substantively unconscionable, and that the Defendants' enforcement of the unconscionable provision constituted an unfair, unlawful, or fraudulent business act or practice in violation of the California Unfair Competition Law, Bus. & Prof. Code section 17200 *et seq.* ("UCL").

(*Id.* at 10.) According to Plaintiffs, the Cancellation Provision is procedurally unconscionable because Defendants drafted it, Defendants had superior bargaining power, and the provision was imposed on a "take-it-or-leave-it" basis, without opportunity for negotiation. (*Id.*) Plaintiffs' contend that the provision is substantively unconscionable because it resulted in the Stock Award Class members forfeiting their entire CSAP awards when they were terminated through no fault of their own. (*Id.*)

In the Motion to Dismiss, Defendants argue that a claim that a contract term is unconscionable does not constitute an unlawful, unfair, or fraudulent business practice. (Mot. Dismiss Mem. P. & A. 11.) They assert that a contract based claim alone cannot serve as the basis of a UCL claim, but instead a contract based claim must be independently unlawful, unfair, or fraudulent to be actionable under the UCL. (*Id.*) According to Defendants, the Plaintiffs' claim is nothing more than a garden-variety contract claim, which does not implicate the UCL. (*Id.* at 12.)

Defendants also argue that Plaintiffs' UCL claim fails because they are not entitled to restitution. (Mot. Dismiss Mem. P. & A. 12.) The California Supreme Court has clarified its position on restitution since the parties briefed this issue. In *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011), the court held that ineligibility for restitution is not a basis for denying standing under the UCL. "That a party may ultimately be unable to prove a right to damages . . . does not demonstrate that it lacks standing to argue for its entitlement to them." *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 789 (2010).

To have standing to bring a section 17200 cause of action, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset*, 51 Cal. 4th at 322. Plaintiffs have adequately alleged an economic injury by pleading a diminishment of a property interest. *See id.* at 323 (stating that either present or future diminished property interest constitutes economic injury). Therefore, to have standing, Plaintiffs must show that this economic injury was caused by an unfair business practice.

The layoff undeniably caused Plaintiffs' property interest in the restricted stock to be diminished, so the question is whether or not Plaintiffs have adequately plead an "unfair" business practice within the meaning of the UCL. Defendants argue that unconscionability is nothing more than an ordinary common law breach of contract claim, which cannot violate the UCL. (Reply at 6) (citing *Shroyer v.*

*New Cingular Wireless Servs.*, 606 F.3d 658, 666, *amended and superceded by*, 622 F.3d 1035 (9th Cir. 2010)). That standard, however, applies to "unlawful" acts, not "unfair" acts. *See Shroyer*, 622 F.3d at 1044. Plaintiffs plead "unfair" acts, (SAC at 9), and "[u]nfair simply means any practice whose harm to the victim outweighs its benefits." *Shroyer*, 622 F.3d at 1044. Plaintiffs allege that the practice of terminating employees without cause with the effect of cancelling employees' future interest in company shares is unconscionable. (SAC 9.) An unconscionable provision is certainly "unfair." While some cancellation provisions have been found to be lawful, *see Nein v. HostPro, Inc.*, 174 Cal.App.4th 833 (2009), others have been held unlawful where they are unconscionable. *See Ellis v. McKinnon Broad. Co.*, 18 Cal.App.4th 1796 (1993). Because the cancellation provision could be unconscionable, it could be unfair under the UCL, and therefore Plaintiffs have sufficiently stated a claim under the UCL. *See Zanze v. Snelling Servs., LLC*, 412 Fed.Appx. 994, 996-97 (9th Cir. 2011). Accordingly, Defendants' Motion to Dismiss Plaintiffs' UCL claim is **DENIED**.

### C. Violation of California Labor Code Section 2802

In the third cause of action, the Business Expense Class maintains that Defendants violated Cal. Lab. Code section 2802(a) because they failed to reimburse the Business Expense Class members for payments made to support staff, despite the fact that the payments were "necessary expenditures." (*Id.* at 9-10.)

In dismissing the First Amended Complaint the Court noted that there were insufficient facts to put Defendants on notice of the section 2802 claim. (March 29 Order 10-11.) For example, the Court informed Plaintiffs that "it is impossible to say, looking at the face of the FAC, whether [the expenses] were incurred in consequence of the discharge of Plaintiffs' duties." (*Id.* at 10.) The SAC has failed to cure these defects. The pleading names a "policy" by which Plaintiffs were "expected" to supplement their support staffs' wages. (SAC 10.) The complaint does not elaborate what the policy was, what "expected" means, or how the payments were "necessary expenditures." (*See id.*) Without more, the statement that "necessary expenditures" were made without reimbursement is precisely the type of bare assertion and conclusory statement that the Supreme Court has held insufficient to survive a motion to dismiss. *See Ashcroft v. Iqbal*, ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). As such, Defendants' Motion to Dismiss Plaintiff's third cause of action for violation of section 2802, as well as

the section 203 claim, is **GRANTED**. The Court cannot conclude that amendment of this claim would be futile. Thus, Plaintiffs' section 2802 claim is **DISMISSED WITHOUT PREJUDICE**. Should Plaintiffs chose to amend, they are advised to provide enough factual detail explaining the "policy" and why the expenditures were "necessary" to avoid dismissal with prejudice.

### D. Class Definitions

Additionally, Plaintiffs have ignored instructions from the March 29 Order regarding class definitions. Plaintiffs were instructed to more narrowly define the classes in terms of time periods employed and in terms of any releases signed, which they have not.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or in the Alternative Strike Second Amended Complaint is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' first and third causes of action are **DISMISSED** for failure to state a claim upon which relief can be granted. Defendants Motion to Strike is DENIED AS MOOT. Plaintiff may file an amended complaint within thirty (30) calendar days from the date of this Order. Should Plaintiff fail to amend his complaint within the time permitted, his claims will be dismissed WITH PREJUDICE.

DATED: August 5, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge